■ WILLIAM J. DALTON, as Administrator of the Estate of HELEN DALTON, Deceased, et al., Respondents, v. STATE OF NEW YORK, Appellant. (Claim No. 45278.) — HERLIHY, P. J. Appeal by the State from a judgment of the Court of Claims, entered August 19, 1968, awarding damages of $8,102.46 for the wrongful death of Helen Dalton. The decedent had been hospitalized in State institutions for mental disturbances on four separate occasions from June of 1955 to September 23, 1964, the date of her last admission at Brooklyn State Hospital. On October 26, 1964 the decedent was permitted to spend her day in an open ward (i.e., no locked doors or guards) and walked out of the hospital and apparently committed suicide by jumping off a ferry boat. The trial court found that the decedent's history on prior admissions was such as to indicate suicidal tendencies and that the State was negligent in failing to provide adequate supervision to prevent her escape and suicide. On October

20, 1964 (six days before the suicide) a doctor at the hospital made an entry in the records as follows: " Patient appears cheerful. She denies any feelings of depression after her return to the hospital. She has been actively attending Occupational Therapy and Recreational Therapy and there has been *no signs of overt psychotic trends.* * * * Medication has been decreased * * * and she seems to be responding quite well to these doses. Patient will be considered for home visits in the very near future." (Emphasis supplied.) The court found: " The defendant is responsible to the decedent's estate for hazards reasonably foreseen and for risks reasonably to be perceived. The defendant owed this patient with suicidal tendencies, the duty of reasonable care to protect her from injury, self-inflicted or otherwise * * * The combination of circumstances at bar demonstrates that this defendant failed to properly and adequately take care of this patient at the hospital, enabling her ' elopement '. Its conduct as to supervision and administration was factually and legally insufficient to prevent the decedent's ' elopement ' and resultant suicide, constituting negligence." The dispositive issue upon this appeal is whether or not the record contains evidence to support the conclusion that the State had notice upon the September 23, 1964 readmission that decedent was in any danger of harming herself and thereby requiring retentive supervision. Claimant's exhibit 14 is the record of decedent's admission to the Brooklyn State Hospital. When she was initially examined in March of 1963 the physicians noted a " possible " tendency to injure herself and others. A clinical summary of the Brooklyn State Hospital dated April 4, 1963 notes that she " denies suicidal tendencies ". A clinical summary from the Pilgrim State Hospital where she had been previously hospitalized was forwarded to the Brooklyn State Hospital on April 3, 1963 and it revealed that in 1955 she was " preoccupied with suicide ". She was discharged from care for the 1955 episode in March of 1957 and the Pilgrim State summary continued upon readmission in May of 1961 with no mention of any suicidal or homicidal tendencies. The notes of the Brooklyn State Hospital upon her readmission in September of 1964 and subsequently, show no indication of suicidal or homicidal tendencies. Claimant's exhibit 15 contains the original notes on examination of deceased prior to her admission in Pilgrim State Hospital in 1955 and they positively note a threat of suicide and a dangerous tendency in the nature of suicide. The initial 1963 admission examination does not note suicide as a dangerous tendency. The decedent was discharged from the 1955 hospitalization in March of 1957. Claimant's exhibit 16 contains the notes of decedent's history at Pilgrim State Hospital upon readmission in May of 1961. The daily note of June 27, 1961 states: " very depressed, always talking about doing away with herself ". She was again discharged from this care on August 26, 1962. The hospital records referred to hereinabove show no marked suicidal tendencies and do not constitute sufficient evidence to support the finding that as of the decedent's last admission on September 23, 1964 the decedent had definite or probable suicidal tendencies. The testimony in the record is devoid of any references to actions or statements on the part of the decedent which would infer any suicidal tendencies in and about September of 1964 or during her previous stay at Brooklyn State Hospital. The record does not contain any evidence that the decedent had ever made any overt act toward suicide. A nurse testified that after the decedent had left the premises on the fatal date of October 26, 1964, she observed in the medical records that the decedent had suicidal tendencies. However, upon being shown the records relating to the 1963 and 1964 admissions, she could not find any reference to suicidal tendencies. In the absence of a showing of suicidal tendencies on the part of the decedent, the State cannot be liable for a failure to provide adequate

supervision. It is to be noted that in this case we are not directly concerned with an informed medical judgment (see *Weglarz* v. *State of New York*, 31 A D 2d 595, 596), but instead are presented with a fact finding as to suicidal tendencies. The claimant has failed to establish any suicidal tendencies on the part of the decedent, the State cannot be liable for a failure to provide adequate records relating to her condition in September of 1964. Judgment reversed, on the law and the facts, and claim dismissed, without costs. Herlihy, P. J., Reynolds, Greenblott, Cooke, and Sweeney, JJ., concur in memorandum by Herlihy, P. J.